UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:19-CR-221-SDJ |
| | § | |
| MYKAL ANTHONY PYLES | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Mykal Anthony Pyles's Motion to Suppress Evidence from Search on February 5, 2020. (Dkt. #62). The United States filed a response, (Dkt. #65), to which Pyles filed a reply, (Dkt. #71). Having considered the motion, the subsequent briefing, and the relevant law, the Court **DENIES** the motion.

### I. BACKGROUND

Working with a confidential informant, law enforcement officers in Paris, Texas developed reason to believe that methamphetamine was being trafficked in an apartment located on N.E. 17th in Paris, Texas. On February 4, 2020, officers presented this information to a local district judge who, finding probable cause, issued a warrant to search the apartment for methamphetamine and equipment for the storage, transportation, and delivery of methamphetamine. The warrant did not authorize a no-knock entry into the apartment.

Officers later discovered that the apartment on N.E. 17th is leased to Pyles, though Pyles does not regularly reside there. Pyles's cousin, Angela Sikes, is the

1

regular occupant of the apartment. Pyles claims that he obtained the lease on behalf of Sikes because he did not believe Sikes would be approved by the property owner to lease the apartment.

On February 5, 2020, law enforcement officers traveled to the apartment to execute the search warrant. Upon approaching the apartment, officers found the front door unlocked and, according to Pyles, opened the door and entered the apartment unannounced. While the officers who executed the warrant believe they knocked on the door and announced their presence prior to entry, they concede that this belief is not based on any independent recollection of actually doing so. Additionally, none of the four officers who executed the warrant noted in their reports that they knocked on the door and announced their presence prior to entry.[1]

After entering the apartment, the officers proceeded to the bedroom where they located Pyles and Sikes along with three others. After detaining the occupants, the officers commenced the search of the apartment where they found seventeen grams of methamphetamine and some drug paraphernalia. Pyles, Sikes, and one additional occupant were arrested in connection with the findings of the search.

Pyles now seeks to suppress the evidence found in the search, arguing that law enforcement violated his Fourth Amendment right to be free from unreasonable searches. Pyles does not challenge the validity of the search warrant but argues that

---

[1] For purposes of this Memorandum Opinion and Order, the Court assumes without deciding that the officers entered the apartment without first knocking on the door and announcing their presence.

2

the failure of the officers to knock on the front door and announce their presence prior to entering the apartment was unreasonable under the circumstances. According to Pyles, the unreasonable entry rendered the search unreasonable and the evidence found in the search should be suppressed.

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Thus, the fundamental inquiry under the Fourth Amendment is whether a search was reasonable. *See United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("The touchstone of the Fourth Amendment is reasonableness."). The Fourth Amendment's reasonableness standard is informed by the common law as it existed at the time of the Amendment's framing. *Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Because officers were required at common law to make their presence and authority known before entering a dwelling, the Fourth Amendment generally requires that officers knock and announce their presence before entering to execute a search warrant. *Id.* at 931, 934. But if officers have a reasonable suspicion that the circumstances present a safety risk, that evidence may be destroyed, or that knocking and announcing would be futile, then failing to knock and announce is reasonable for purposes of the Fourth Amendment. *Hudson v. Michigan*, 547 U.S. 586, 589–90, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).

3

The exclusionary rule is a doctrine that operates to suppress evidence obtained in violation of the Fourth Amendment. *Davis v. United States*, 564 U.S. 229, 231, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). The purpose of the exclusionary rule is to deter Fourth Amendment violations. *Pa. Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). However, the suppression of evidence will not necessarily result from every Fourth Amendment violation. *See Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("The question whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated."). The exclusionary rule applies only if the interests protected by the constitutional rule at issue bear some relationship to the seizure of evidence—such that suppression would actually vindicate the violated interests. *Hudson*, 547 U.S. at 593. Even then, evidence should be suppressed only when the deterrence benefits of suppression outweigh the substantial societal costs. *Scott*, 524 U.S. at 363.

### III. DISCUSSION

In *Hudson*, the Supreme Court concluded that the suppression of evidence is unrelated to the interests protected by the knock-and-announce rule and that the costs of suppression greatly outweigh its deterrent benefit in knock-and-announce cases. 547 U.S. at 594–95. This was the basis for the Court's holding that the exclusionary rule does not apply to violations of the knock-and-announce rule. *Id.* at

4

599. In seeking the suppression of evidence in this case, Pyles attempts to distinguish *Hudson*. His attempts are unavailing.

Pyles argues that the constitutional violation is more serious in this case because the officers did not knock and announce their presence at all, whereas in *Hudson*, the allegation was only that officers did not wait a sufficient amount of time between knocking and entering. A more serious violation, Pyles argues, warrants the more serious remedy of suppression.

However, nothing in the Supreme Court's reasoning in *Hudson* turns on the exact nature of the knock-and-announce violation. The Court reasoned that the interests protected by the knock-and-announce rule—the preservation of safety, property, and privacy risked by sudden, unexpected entry—have nothing to do with the seizure of evidence. *Id.* at 594. Therefore, the remedy of suppression bears no relationship to the interests protected by the knock-and-announce rule.

The Court further reasoned that the cost of suppression is significant in relation to the deterrence benefit in cases of knock-and-announce violations. The costs include the exclusion of relevant, probative evidence from trial as well as the flood of litigation that would ensue as defendants, in hopes of getting evidence suppressed, would seek to argue that every failure to knock and announce was unjustified. *Id.* at 595. Meanwhile, the deterrence benefit is diminished by the fact that there is little incentive for officers to violate the knock-and-announce rule. *Id.* at 596. Unlike warrantless searches, which can lead to the discovery of otherwise

undiscoverable evidence, officers gain little from failing to knock and announce their presence. *Id.*

This reasoning applies categorically to all knock-and-announce violations. Even when officers fail to knock and announce entirely, the discovery of the incriminating evidence is too attenuated from the constitutional violation to warrant suppression. The interests protected by the knock-and-announce rule remain unrelated to the seizure of evidence regardless of the exact nature of the knock-and-announce violation. And the failure to knock and announce does not cause the discovery of evidence—the execution of a valid search warrant does. Furthermore, the incentive for officers to refrain from knocking and announcing their presence is not any greater than it is for officers to knock and then immediately enter. Therefore, even in cases where officers do not knock and announce their presence at all, the deterrence benefit of suppression is slight in relation to its significant societal costs.

Pyles also argues that the Supreme Court based its decision in *Hudson* on the fact that suppression is unnecessary because there are other meaningful methods of deterring knock-and-announce violations, such as civil liability. Pyles urges this Court to adopt a different rule for violations occurring in Paris, Texas because the average Paris resident does not possess sufficient resources to actively litigate civil-rights lawsuits. According to Pyles, without the threat of civil liability, knock-and-announce violations will remain undeterred in Paris unless this Court suppresses the evidence in this case.

Whatever the merits of this contention, the holding in *Hudson* was not based on the availability of other deterrents; it was based on the attenuated causal relationship between the knock-and-announce violation and the discovery of evidence as well as the exclusionary rule's significant societal costs compared to its marginal deterrent effect in knock-and-announce cases. It is true that the Court in *Hudson* responded to the defendant's contention that suppression was the only available deterrent, but only after the Court made clear that its decision did not hinge on this point. *See id.* at 596 (noting that, even if it were true that there is no other method of deterring knock-and-announce violations, that would not necessarily mean that the evidence must be suppressed). *Hudson* therefore governs this case, and Pyles's suppression motion should be denied.[2]

### IV. Conclusion

It is therefore **ORDERED** that Defendant Mykal Anthony Pyles's Motion to Suppress Evidence from Search on February 5, 2020, (Dkt. #62), is hereby **DENIED**.

**So ORDERED and SIGNED this 16th day of September, 2020.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court concludes that the exclusionary rule is inapplicable, Pyles requests alternative relief in the form of a jury instruction informing the jury that the officers in this case failed to knock and announce their presence in violation of the Fourth Amendment and that the jury may take that into account when assessing the officers' credibility. The request is premature. Pyles may request the inclusion of the proposed jury instruction at the time of trial.